Lewis Thomas on behalf of Appellant George McGavitt. Members of the panel, this case should be reversed because the criminal trial court erred in three respects as pointed out in our briefs. First, that the sadism and masochistic conduct content enhancement pursuant to 2G 1.1 was improperly applied. Second, that the distribution enhancement was improperly applied where the sexual contact did not occur during, in preparation for, or following the actual production of the pornography at issue in this case. Turning to our first point, Your Honor, the only evidence contained in the record concerning the sadism masochistic conduct enhancement is contained in a single paragraph of the PSR. In that paragraph, it describes a sexual contact that occurred during the production of the pornography at issue in this case. In that paragraph, it describes a single paragraph of the PSR. In that paragraph, it describes a  is that he certainly, as far as the content of what's in the video, we're not in dispute about the facts of that. Whether he induced the complainant in this case to making the videos, we're not in dispute about that. He certainly induced her to produce the videos at issue here. Now, where my question was going, you started by what only there is in the PSR. And because it's a guilty, you know, straight up, ordinarily, you know, there's a factual recitation about crime, et cetera, that the person embraces in order to enter the plea, right? And so my question was just whether or not, you know, what facts do you acknowledge in the guilt of plea property that would probably be something that the judge could take into account in terms of the citizen, assuming that it was the same person. And so that was just kind of a question, not to be tricky. In other words, if it's an objective stand, in other words, if the same judge who took the plea, the judge blindfolded from what person pleaded guilty to, were there facts that could be taken into account, even by this court, if it's an objective statement. The following statement may not be anything, it may be innocuous and build into your art. And I ask the same thing of, you know, the governor when they get up. I understand that. And I'm only relying on my recollection. I don't have that portion of my record. Okay. But I agree with the court's general principle that facts agreed to in the factual basis certainly are available to the court. I just, I can tell you that I know that there was no, there was no agreement as far as the application of any guideline that would have been contained in the factual basis. Okay. So with respect to the appropriate standard that this court has applied in the United States versus the Naismith case, which is cited in our briefs and was cited at the trial court level, the Naismith in pointing out that the language of the... Well, let me cut to the chase. I know you want to make the argument, but you agree it's an objective statement. It is. All right. So need we look at the video at all to make the determination? I don't believe that it's necessary for this court or even the trial court at this point, because I think the facts are undisputed as far as what's contained in the video. So I don't believe so. So if it's an objective standard and you don't need to look at the video, what is your argument as to the parameters of what the judge can take into account in terms of this enhancement? I mean, it's a whopping, you know, enhancement. So what's your, this argument? I mean, Naismith says it's an objective standard, but what are you saying is what the reasonable observers should be limited to taking into account? I think what the court delineated was that you cannot take into account the subjective intent of either the defendant or the complainant. So the bright lines, I think, is that the four corners of the either image or the video is all that the court should consider under that standard. So, for example, in this case, the plaintiff, the complainant, to induce her to produce the specific video. The court, Naismith said that that's not relevant. The court said that the only thing that is relevant is what is contained in the actual image. Whether or not there was coercive statements prior to following at any other point, if they don't appear on the image or in the material, then they're not subject to the enhancement. All right, so in this case, there's no dispute, et cetera. In this case, the instrument is a hairbrush. So if the district judge concluded that the nature of a hairbrush is such that a reasonable observer could infer pain, why is that a reversible error? I think that it's not that they could infer it. It's that a reasonable observer would under this court's standard. And that's exactly the mistake that our point is on that the probation office made in this case in their response, that they could confirm that it could cause pain. But it's not that it could, it's that it would. And, in fact, did. Judge, frankly, I'd be remiss if I didn't distinguish all the court's cases as far as penetration with objects with a hairbrush. A hairbrush is the most benign object available to a teen, female or male, frankly. There are certainly non-erotic reasons that a person might penetrate themselves with a hairbrush, whether that's the prominence of a 13-year-old girl. And that's the point that we're trying to make here is that versus something like a screwdriver or these cases that talk about anal penetration. Counsel, what do you what do you make of the Eric case? I mean, that's it's an unpublished opinion, but it seems to address this very point. And it basically says sadism is sort of per se, for maybe that's not a great word, but it's going to be actionable or subject to this enhancement. And masochism would be too. There's no difference between whether there's two people involved or one. Not unpublished authority, but there it is right in our circuit. So does that case not persuade us? I think, number one, Eric, the discussion of the penetration in that case, it was addictive. In that case, it's addictive, but I'll stipulate that it's in the footnotes and they didn't have to reach the issue. But isn't that the framework? I mean, if you want to establish a bright line rule, why don't we go with the Eighth Circuit and Starr and Parker and then Eric and just say, this is what it is. And I think I will submit, Judge, that the Eighth Circuit test is different than what the Fifth Circuit has articulated in that they are, if I'm recalling correctly, they're willing to take into account those other considerations sort of tacit to the production of the video, whereas this court, and not only in, excuse me, Newsmith, but recently in Meacham, this court, another panel opinion discussed the objective standard and basically said that the court has to make some findings that demonstrate that the penetration or whatever the issue is, it did, in fact, cause the pain. What about Eric? I think Eric involved from the government's brief, and Eric, Your Honor, it doesn't actually, it's not stated in the opinion, but in the government's brief, they described the penetration of using a sex toy by, I believe it was eight to 11-year-olds, if I'm recalling correctly, and in that case, I would argue that sex toy is something that's plainly distinguishable from a hairbrush. That's something that would not be ordinarily available to a teenage of any type that was at a responsible affair-involved vertex. Counsel, the footnotes don't talk about all that. It just says there's no difference between masochism and sadism. In other words, we treat them the same way. Isn't that right? Well, as far as inflicting a pain on another versus the infliction of pain on oneself over the purpose of the sexual release is my understanding of the difference, but I think if the court's trying to make a bright line that any penetration is inherently sadistic or masochistic, I think that that's, for example, even in the definition, like Fitz pointed out in indictment, sexual, let me pull it up, sexually explicit conduct, for example, distinguishes masturbation, even in the statute, from, say, that's masochistic conduct. So I think obviously masturbation is contact with the person's genital area, and I think there is a distinction between those two, and they're not necessarily, the fact that penetration doesn't necessarily make it sadistic would be our position. So back to my earlier question, if it's an objective test, then what is it you say that the objective observer, you argue that the objective observer would draw upon the benignness of the hairbrush, is that what you're saying? Because it's benign, you can't, the objective observer could not conclude otherwise, is that what you're saying? I mean, especially, maybe not in every case, but in this particular case, there's nothing about the person's appearance, disposition, other circumstances depicted on the image that give rise to any inference that the person is in pain. Whether it's obviously inappropriate for a person to produce this kind of content, and or ask for someone else to produce it, we're not saying that, but if in isolation, the team, which is what I think the court has to look at here, created this image based on her own whim, it's not any different, because it's certainly associated with Mr. McGavitt, that's not relevant to the inquiry, it's whether this image on its own rises to that level, and so I think if we, if we conflate those two, Mr. McGavitt's already obviously being counted, held accountable for the offensive production and enticement, and that's accounted for in the base offense level, this is adding on, so if we don't separate those two, the image from the circumstances surrounding it, he's going to be accounted for twice. And specifically in this case, there's no, there's nothing about the image or the district court certainly didn't make findings about the image, about whether they were going to review them or probation was going to review them or whoever, that supported the fact that there was any pain apparent or inherent in the particular material issue. So if you want, on the first issue, this enhancement, let's just say for the sake of my question that we agree with you that there's no, you know, per se rule like the circuit, but that the nature of this object in and of itself doesn't satisfy the pain. So assuming he won that, his other objections were all plain air, so assuming he won on the first one, lost on the rest of them, what would the bottom line of this sentence be? I mean, he's got a lot of stuff backed up here, so. It is, your honor. It would change the applicable guidelines. He would be reduced to a level 42. It's 360 to life instead of just guideline to life. And so even for a 45-year-old man, the possibility of some release versus life sentence I think is real and significant. And the district court would certainly have life as part of the guidelines. We certainly would recognize that, but 360 to life is generally different in our position. So his best case scenario would be 360 to life? If the court only sustains that point, yes. As I said, I'm just asking as a matter of information in terms of all these different calculations of where he would end up. I'm not saying that's what the court would do, but just because they're part of the various calculations. Okay. All right. Well, we have no open argument. Thank you for helping me preserve your rebuttal time. So let's hear from the government, and we'll look for you when you come back up. All right. Mr. Sand? May it please the court. Andrew Sand from the United States of America. Your Honor, to answer your question, the factual basis that we pled to that's relevant to the first issue can be found on ROA 108, and that states that minor victim one whose face is visible throughout the video can be seen inserting the handle of a hairbrush into her vagina. The PSR expounds upon that a little bit, but that is the undisputed basis for application of the state as an enhancement. The government's position is that enhancement was properly applied in this case. That issue, it's on clear error review, which McGavitt concedes. That means that this court should not reverse unless it's left with the firm, indefinite conviction that a mistake has been made. But that's the factual basis, right? Not the application of the guideline. Wouldn't that be de novo? Yes. Yes, Your Honor. All right. So if the facts are undisputed, I guess the question really is, do those facts lead to the correct application of the guideline? In other words, did the district court apply the right standard? Is that right? Yes. I think there are a couple of issues here. One is whether the district court applied the right standard. I think it did. McGavitt mischaracterizes this court's holding in Naismith. The focus of Naismith is on the contemporaneousness requirement for the state as an enhancement. Were there any findings regarding contemporaneous pain? I don't think contemporaneousness is at issue here. Well, I think the issue would be whether there was any evidence that the victim suffered pain, emotional or physical. Again, well, contemporaneous, whether it's an issue or not, whether the video evidence is that, right? Yes. Yes, Your Honor. Where are the findings with regard to that? So the district court adopted the PSR. But where are the PSR's findings with regard to that? The PSR describes this video. It can be found at... Well, I understand the PSR describes the video, but does the PSR say anything about the victim's pain? The PSR states that it could cause her physical and emotional pain. And that's enough. Is that enough? The government believes so, Your Honor. Just a possibility. Is that what Naismith says? Again, I said the Naismith is all about contemporaneousness. Well, it's not about all that. In Naismith, the victim was asleep. Yes, Your Honor. The court said she was asleep, so there was no pain, you know, depicted. So, I mean, it's fact the victim was asleep. So, I don't understand what you're saying. I mean, Naismith just stands for it's an objective inquiry. So, I'm not following what you're trying to get out of it. I mean, we agree that it holds it's an objective standard. In that case, it said the victim was asleep. Otherwise, being asleep, there's no pain depicted. That's what it says. Yes, Your Honor. What Naismith says is that because she was asleep, her allegation of emotional pain came from after the fact. So, let's back up a step. I want to ask you what I ask counsel opposite. Is it the government's position that the objective of certain, well, is it the government's position that viewing the video plus whatever else is there, the victim's statements, the whole nine yards is part of the inquiry or is the government's argument that it is objective and viewing her statements or anything else is not part of the case? The government's position is that the objective inquiry includes the context surrounding the creation of the image. But here, I think to win, we don't need that. The video itself, which depicts the minor victim, who is only 12 years old, inserting a hairbrush repeatedly in her vagina, that is just the video itself. That indicates physical pain. That's enough for a basis. Well, you seem to be making a per se argument. Are you? I think the fact that the district court adopted the PSR, it applied the standard to the facts here. I think we don't need to go into it with a per se argument. Well, let's back up a step. I get to ask the questions and you get the answers. That's right. Let's be real clear here. Do not get it twisted. I asked you a straight up question. I want a straight up answer. Don't tell me what the district court didn't need to do. The reason it's so alarming is to get answers to the question. OK, I read what the district court said and I'll give you a chance to explain it. Don't do something. I wouldn't be asking a question if I didn't think it was pertinent to the inquiry. I'm trying to zone in on exactly what the government's position is. I know you want to win, but I'm trying to find out. We don't have a case that's on all fours with this. So I'm trying to discern from you, is the government urging an objective test that does not take into account looking at the video victim statements or not? Or are you arguing for a all of the above as part of the calculus? I mean, that's a straightforward question. Yes, Your Honor. The government's position is for the second. OK, so when of our case law gets you there? Yes, Your Honor. So some of the previous cases prior to Naismith have looked at the context surrounding the creation of the image. In particular, Como, the district court relied on the victim's trial testimony that she had been humiliated. And that that was enough. That was outside of the creation of the image. Well, in this case, if we were to take into account the victim statement, is there any question that Wilson has asked twice? Is there anything back down by the district court or otherwise that connotes pain? Yes, Your Honor. The district court did not make a specific finding as to what connoted pain. However, there is basis in the record for that, especially emotional pain. This video was not made for minor victim one for herself. It was made in the context of her sexual coercive relationship with McGavitt. I direct the court's attention to her letter, which was read to the district court at ROA 131 through 38. And she she talks about the creation of images. She talks about how she can't count the number of pictures that he wanted her to send or the number of videos. And then after that, she talks about an eerily similar instance where she talks about how she'll put a butter knife in an area that she won't mention because it said that she had been a bad girl. She talks about how all of this left her isolated, depressed and suicidal, how she mentally and emotionally shut down and how she slit her wrists and she cut her legs over 40 times in one night. That's all indication of emotional and physical pain associated with that relationship. But associated with the relationship, I think Nesmith requires more because it's got to be related to the video and contemporaneous with the video. So I mean, is it the position of the government that an implied finding that, yes, this video came with pain enough? I believe so, your honor. But again, I think the video itself just showing the act of insertion by a hairbrush into a 12 year old girl, that's enough to get you there just based on Does that mean the government's endorsing that absolute rule of penetration? The government doesn't need an absolute rule on penetration. I think just the government's position would be that we should look at the facts of the case. There might be instances where penetration or self-penetration might not evoke physical or depicted as my colleagues have pointed out a couple of times in their questioning to you. Maybe the law shouldn't engage in this kind of an assistance, but what it asks is whether or not it says that the enhancement is based upon the fact whether or not this particular depiction itself demonstrates the pain or evidence of this pain or not. In other words, that's the focus of the law. And if you drop off of that and go into all the other considerations, you may be just doubling up on similar conduct for enhancing among other things. So I have a little difficulty in understanding the government's argument here. Yes, Your Honor. So our position would be that the video itself, just the depiction of the insertion of the hairbrush for this victim, a 12 year old girl. The person looking at it objectively knows nothing else about it other than that it's the picture. Now, what do you say to that? We say that that evokes physical pain on her. She is experiencing physical pain. An outside observer would think that she is experiencing physical pain, and that's enough for the sadism enhancer here. I suggest that that's kind of in the eyes of the beholder whether or not she is. Sorry, Your Honor. That sounds like it's still in the eyes of the beholder whether or not she's experiencing pain. In other words, you can exclude the experiences that she had, but you substitute for them the experiences of the viewer. Yes, Your Honor. That is the standard laid out in Naismith, which requires an objective outside observer's viewpoint from that. You're not supposed to take into account the viewpoint of the defender. But that brings a level of uncertainty and lack of uniformity that is not welcome in this context of enhancements where you're already punishing conduct out of the same set of operative facts, essentially. You have to like this one particular one. If you don't narrow it to the confines of that, then you are at risk of doubling up on your enhancing twice the same conduct. I think in this context, it's hard to draw a bright line rule, a per se rule saying, you know, every type of self-penetration is per se sadistic. I think there are instances where Let me just try it this way. Based on your argument, it sounds to me like that you really are taking the bright line rule that in these circumstances, looking at this, that we will at least presume, and that's something else, that there's pain involved. And the objective test that my colleague suggested to you at the outset, that was also part of the array. I think that these were kind of similar images, you know, involving a girl this young, involving that size of an object that she's inserting into herself. We would argue that almost, we would argue that all images similar to that should be sadistic. And I think I would at least point this court's attention to Comeau. The argument that the defendant makes here is similar to the argument that was rejected in that case. There, the defendant argued that there's no pain associated with an image because he was having oral sex with this 10-year-old daughter. And the court rejected that argument. It upheld the sadism enhancement, and then it stated that it declined to descend into the abyss of deciding where or whether a line could be drawn, delineating which types of penetration are per se sadistic or violent. It sounds awful likely drifting toward the same phenomenon we have with obscenity. I know it when I see it, and the whole readout process is before the court to produce. Yes, Your Honor, I think just to clarify on that, I think it would be more about the district court knows it when it sees it. And again, I think just to remind this court, at least for this issue, we are on clear error review for their determination of the image itself, whether it is sadistic. But the district court knows it when it sees it. The problem goes back to what we were talking about earlier. I don't see in the PSR or in the district court's findings where it saw it or didn't, specific to the contemporaneous pain. If it is the district court knows it when it sees it, I'm not sold on that. But if it is, then shouldn't that mean the district court has to make a finding about that? Your Honor, yes, you're correct. The district court didn't make an explicit finding, but I think by adopting the PSR, there was a description there. But it's implicit regarding the point of pain. In other words, the PSR just nobody seems to have shown their work here. The PSR says there's this and here are the facts and this is sufficient for the sadism masochism enhancement to apply. But there's nothing about the subjective view of whether the victim is experiencing pain contemporaneous to the image. I think there was a little bit of a lack of showing their work here, but you know, this objection was raised below the PSR. The probation officer addressed it in the PSR. That's where you get the statement that an observer could reasonably determine that there was, that there could be physical and emotional pain associated with this image. But could be isn't, it is. Yes, Your Honor. Where do we get informants on that sliding scale between it's possible it could be and the victim experienced pain? What, how far do we have to get toward the certainty? Yes, Your Honor. And just to add to that, I think at least in sentencing, this was litigated. And at the very least, I think the district court credited the governance argument that that she experienced pain in overruling this objection to this. But that's just argument. Yes, Your Honor. Again, there were, you're right. There is a lack of showing the work. There was no explicit finding that there was. I don't think for a four level enhancement, there are some parameters of findings or something that the government comes forth with for a four level enhancement where a person is getting double the amount that it might get for redistribution. I mean that it should, an inference is all that's needed that I guess the government's position is an inference is enough to trigger a four level enhancement where a person gets double life in prison. Yes, the government's position is an inference is enough here. I think there are other cases where inferences have been made. Lickman in particular, there was a reliance on reasonable inferences. You said there is enough, but you're reaching past the picture. The whole notion is that this is an offense distinct from the underlying brutal conduct that we all know happened here, horrendous conduct. But all of that has been punished. Now the question is, is there a distinct element here that we reach for? And that is that a picture that itself is going to, what is the damage of that picture? It's going to be sold or distributed or whatever. And the answer to that is you have to focus on that element of it. The fact that all that background doesn't really map onto that, does it? It's just you take it out and move this picture away from this matrix of fact. And here's the picture. This is what's going to be distributed and that's why they're going to enhance it. But that's the problem. If you move away from some kind of an objective test or not, either it's not there or you're going to have to suppose it's there. Yes, Your Honor. I think this enhancement, it's a specific characteristic of the offense that was pled to. And because this offense involved material that portrays sadistic, masochistic conduct or other depictions of violence. Well, that sounds like a presumption. A presumption that it meets the distinctiveness that must underlie the escalation of the sentence or the distinctiveness of it. I think at least for the contents of that video itself that, and in this case's prior holdings that talk about, you know, how the into the body canals of a child. I think you could easily apply a presumption here. We follow Eric. I mean, Eric basically says, well, Methameth applies to masochism like it does to sadism. And in those footnotes, it's dicta. They don't reach it on the merits. They say that he weighed the argument. But I mean, they basically say the same thing that applies to sadism would equally apply to masochism. And so basically we get into our prior precedent before Nesmith that says penetration by two people to one people still involves the enhancement. I mean, is that the government's position? Yes. Yes, Your Honor. So we should be persuaded by Eric. I think Eric is persuasive. I think that Nesmith, it doesn't create a new standard. That standard, the objective standard, has already been applied by this court for the sadism enhancement. And I think prior to this, we just applied to masochism. Yes. Yes, Your Honor. And again, I would direct this court's attention to Lickman, which is pre-Nesmith. But again, they talk about how this court has upheld this enhancement for the insertion of body canals of a child. In that case in particular, involved a 12-year-old child as well. All right, Mr. Sain, time's up. We appreciate your argument and your briefing. We'll hear back from Mr. Thomas on the phone. Thank you, sir. Yes, Your Honor. Thank you. Please report. With response to the government's point concerning this court being allowed to take into account those separate circumstances, I just ask the court to look at the reasoning of Nesmith again, in that it starts with the text of the specific enhancement. I think it's relevant to Judge Higginbotham's point earlier that this is a enhanced or not. And it talks about portraying depictions. And so whether what happened before or after doesn't, isn't relevant to the text of portraying a depiction of an image. Your Honor, the panel, I would ask, I didn't have much time to talk about point two, but I'd ask the court to consider point two in this case. There's no evidence whatsoever in the record of distribution. I recognize that below, certainly myself, on behalf of the Cullen, failed to object to that distribution. But in this case, the indisputable facts are that my client requested that the complainant produce the images and she sent them to my client. And there was no other movement, transfer, placing on website. There was nothing that the court has traditionally considered as distribution that occurred. But she sent it to him. Yes. Where's your case that says that that's not distribution or not sufficient? I don't have a case out of the Fifth Circuit. And how is it a plain error that the district court committed? The text of the solicitation from the, the mere solicitation. Solicitation means I asked you to do it, but she actually sent it. Is there a distinction? I would, yes, I would not argue yes. In this case, I mean, there would be no production element that exists without the person. I guess it's certainly possible for the individual in charge to film the act, him or herself. But in this case, my client was not even in the same state with the complainant at the time that these images were produced. So I guess the fact that she sent them over the internet, I mean, I just think that that's, I don't want to say what I think. The text of this implies that the defendant himself distributed, distributed the images. How many times do you have to, to move it before it arises to the level of distribution? Well, you're back to the same kind of awkwardness, distributed. What you have here is that the extreme edges in application that I suggest to you is driven by the horrendous conduct that underlies this. And that's, that's completely one of the particular conduct that allows it. So you, each one of these, these levels of questions are being pushed to their outer limits. We're not here to get distribution. Well, the distribution is just one, it's handed to the, perpetrator here, then that's distribution. But it comes back to this question, what rule would you have us apply? That's not distribution. It's the same, it's the same, in a large sense, it's the same definitional problem. I think I understand your point, Judge. The rule that we would ask the defendant to either be made available to any other person, or to transfer it to any other person, then there is no distribution. But another person's one, so that, that, that. Are you, you represented below? Yes, yes, I did. Can I ask why you objected it? Judge, I'll be frank, it's just, it was an oversight. I don't have a good specific reason for the board, so that was meant, the question wasn't meant to embarrass you at all, but we just, so often we get these situations, the difference between an objection or not, you know, because we apply different standards, and I just wondered whether it was a strategic, you know, reason or not, but I certainly didn't ask, but I mean, often we don't have counsel here to represent the person below, so, you know, sort of get what you get, but I was just wondering, given the potency of the argument you used, you know, for not raising it, but that, you know, clarifies. I much prefer when we have people here that count it below, so we get a better sense, a better sense on it, so. Anyway, I think we have your points on, on the other issues, and understand your, your argument on the, the enhancement, so we'll deem the case submitted, and we'll work it out as best we can. Thank you, Your Honor. All right, thank you, and thank you, Mr. Sands.